**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PATRICK H. HYATT; HERMAN O.
CAUDLE; MARY P. LOVINGOOD, on
behalf of themselves and all others
similarly situated,
<u>Plaintiffs-Appellees,</u>

and

NORTH CAROLINA DEPARTMENT OF                                        No. 96-2062
HUMAN RESOURCES,
<u>Plaintiff,</u>

v.

KENNETH S. APFEL, COMMISSIONER OF
SOCIAL SECURITY,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CA-83-655-C-C-M)

Argued: October 28, 1997

Decided: October 27, 1999

Before RUSSELL,* WIDENER, and TRAXLER, Circuit Judges.

_____

*Judge Russell heard oral argument in this case but died prior to the
time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

Affirmed in part, vacated in part, and remanded by published opinion. Judge Widener wrote the opinion, in which Judge Traxler concurred.

_____

**COUNSEL**

**ARGUED:** Howard Stanley Scher, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. John Robbins Wester, ROBINSON, BRAD-SHAW & HINSON, P.A., Charlotte, North Carolina, for Appellees. **ON BRIEF:** Frank W. Hunger, Assistant Attorney General, Mark T. Calloway, United States Attorney, William Kanter, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Sarah B. Boucher, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina; Charles McB. Sasser, Douglas S. Sea, COX, GAGE & SASSER, Charlotte, North Carolina, for Appellees.

_____

**OPINION**

WIDENER, Circuit Judge:

Not unexpectedly, this step in this litigation is concerned exclusively with attorneys' fees. We affirm in part, vacate in part, and remand with instructions.

The case arose in the Western District of North Carolina in 1983 as a suit to require the Secretary of Health and Human Services to follow circuit precedent in Social Security cases, especially with respect to pain. It has been the subject of four published opinions of this court, a remand by the United States Supreme Court, and the numerous district court decisions leading up to the appeals. See Hyatt v. Bowen, 476 U.S. 1167 (1986); Hyatt v. Heckler, 757 F.2d 1455 (4th Cir. 1985) (Hyatt I); Hyatt v. Heckler, 807 F.2d 376 (4th Cir. 1986) (Hyatt II); Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990) (Hyatt III); and Hyatt v. Shalala, 6 F.3d 250 (4th Cir. 1993) (Hyatt IV).[1]

_____

[1] See Hyatt v. Heckler, 579 F. Supp 985 (W.D.N.C. 1984); Hyatt v. Heckler, 586 F. Supp. 1154 (W.D.N.C. 1984); Hyatt v. Heckler, 618 F.

2

The history of this litigation has been set out in some detail in our previous opinions, and we will not repeat it here. In our decision in Hyatt III, we affirmed the decision of the district court setting aside Social Security Ruling 88-13, and in Hyatt IV , we approved the fourth and fifth motions for attorneys' fees through June 17, 1988. The first, second, and third motions for attorneys' fees had previously been acted upon and had been awarded under the provisions of 28 U.S.C. § 2412(d)(1)(A) on the basis that the position of the Secretary was not substantially justified.**2** The fourth and fifth motions for attorneys' fees considered in Hyatt IV were considered under the bad faith standard of 28 U.S.C. § 2412(b).

I.

In the case presently before us, we consider the sixth motion for attorneys' fees for the period from June 19, 1988 through June 19, 1994. Hyatt III was decided March 30, 1990, and the government does not contest the finding of bad faith made by the district court for the period ending March 30, 1990. So a period we consider here is from March 30, 1990 until June 19, 1994.

The district court found the government to be in bad faith because of its previous litigating position, largely or almost wholly concerned with its refusal to follow circuit precedent, and its reluctance or recalcitrance to comply with court decisions in this case.

The government takes the position, however, that the finding of bad faith is not required under Commissioner, INS v. Jean, 496 U.S. 154 (1990), because following our decision in Hyatt III, the government promulgated Social Security ruling 90-1p which, it argues, was consistent with circuit precedent despite the expressed reluctance of

_____

Supp. 227 (W.D.N.C. 1985); Hyatt v. Bowen, 118 F.R.D. 572 (W.D.N.C. 1987); Hyatt v. Sullivan, 757 F. Supp. 685 (W.D.N.C. 1991) (appeal dismissed without prejudice and remanded to the distric court in consideration of the settlement agreement entered into by the parties in Hyatt v. Shalala, No. 91-2618 (4th Cir. Jan. 24, 1994).
**2** While the district court found bad faith, the fees were not awarded on that basis.

3

the government to promulgate the same. It argues that <u>Jean</u> does not require a finding of bad faith to continue when the bad faith has ceased. Otherwise, the argument goes, a finding of bad faith in a case would operate much like an attainder and would continue indefinitely.

It is true that the plaintiffs contested Social Security Rule 90-1p, but the appeal of the government from an adverse decision of the district court in that case was remanded by agreement on January 24, 1994, and the parties entered into a settlement of all differences in March, 1994. In the meantime, we had decided the case of <u>Hunter v. Sullivan</u>, 993 F.2d 31 (4th Cir. 1992). That was a case involving the very pain standard considered in the <u>Hyatt</u> litigation. Indeed, it involved Social Security Ruling 90-1p. <u>Hunter</u> construes ruling 90-1p to be:

> This ruling requires an adjudicator to consider subjective testimony concerning pain if a "physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence."

993 F.2d at 36. As quoted, this construction of ruling 90-1p is consistent with circuit precedent and effectively completes the overruling of rule 88-13, which commenced the overruling of Social Security ruling 82-58, the ruling which might be considered the principal root of this controversy. See <u>Hyatt v. Heckler</u>, 579 F. Supp 985, 988, <u>et seq.</u> (W.D.N.C. 1984).

The narrow question before us is whether <u>Jean</u> requires, in each case, that a finding be made on the whole case of whether or not the bad faith standard applies, and apply that finding throughout. While in many cases that rule might be true, we believe it is not to be applied in a case such as this in which the government, although reluctant, has surrendered a position it has maintained through the years, even if in bad faith. We arrive at this conclusion by the very language of <u>Jean</u>, which provides "that only one threshold determination for the entire civil action is to be made." 496 U.S. at 154. The example given is of unjustifiable agency action forcing litigation, with the agency then trying to avoid liability by reasonable action during the litigation. <u>Jean</u>, 496 U.S. at 154, n.10. We think that the use of the word threshold does not indicate that the same position with

4

respect to bad faith must be maintained by the courts throughout the litigation, regardless of the performance of the government. But it does mean that once a finding of bad faith has been made, the inferior courts would be justified in continuing that finding unless conditions were shown to have been changed, as here. Were this not the case, the language of the court, in the third-from-the-last sentence of Jean, would have no meaning. That language is:

> The EAJA further provides district courts' discretion to adjust the amount of fees for various portions of the litigation, guided by reason and statutory criteria.

Jean, 496 U.S. at 165-66. If the threshold finding of bad faith must be applied at every stage of the litigation, regardless of the government's changed position, that would take from the district courts their discretion "to adjust the amount of fees for various portions of the litigation." Jean, 496 U.S. at 165-66. In the case before us, after years of litigation, the government at last changed its position. That present position has been litigated, and the finding in Hunter is favorable to the government. We are thus of opinion that it was an abuse of the district court when it did not find a lack of bad faith beginning with March 30, 1990.**3**

Along the same line, since the position of the government has been litigated and upheld, we think the government's position has been substantially justified commencing with March 30, 1990.

II.

The district court awarded market-rate fees, but we think this was error. It should have awarded fees at the historic rate. See Library of Congress v. Shaw, 478 U.S. 310 (1986); National Wildlife Fed. v. Hanson, 859 F.2d 313, 318 (4th Cir. 1988).

_____

**3** We agree with the government that its initial opposition for fees claimed for work on the fourth and fifth fee petitions was a mistake, not deliberate misconstrucing of precedent.

5

III.

The government has conceded that the plaintiffs' attorneys are entitled to fees for their work on the fourth and fifth fee petitions at the rates in effect at the time the work was performed. We agree.

IV.

The last point we consider is whether the district court's application of a 1.333 multiplier for exceptional results should be affirmed. The subject has been discussed in Hensley v. Eckerhart, 461 U.S. 424 (1983); Blum v. Stenson, 465 U.S. 886 (1984); Pennsylvania v. Delaware Valley Citizens Council, 478 U.S. 546 (1986); and the same case, reargued on one point, Pennsylvania v. Delaware Valley Citizens Council, 483 U.S. 711 (1987); not to mention our case of Lyle v. Food Lion, 954 F.2d 984 (4th Cir. 1992).

The upshot of these cases is that many or most of the reasons initially considered by the inferior federal courts to entitle an attorney to an enhancement of a fee figured at a rate times hours spent have been qualified or minimized so that they would have no effect here. But the item which has survived is an enhancement for "certain `rare' and `exceptional' cases, supported by both `specific evidence' on the record and detailed findings by the lower courts." Delaware Valley, 478 U.S. at 565. The district court found this was such a case, and we quote its findings here:

> The exceptional results obtained by Plaintiffs in this case cannot be disputed. Plaintiffs have succeeded in forcing the Social Security Administration to halt application of a secret, unlawful policy to its determination of hundreds of thousands of disability claims in North Carolina and, perhaps, to many hundreds of thousands more outside of North Carolina. In its last decision on the merits, the Fourth Circuit also ordered the Social Security Administration to cease applying its unlawful regulations and policies not only in North Carolina, but "in this circuit." Hyatt III, 899 F.2d at 335. Moreover, in apparent response to Hyatt, the Secretary thereafter promulgated new national regulations establishing a new pain standard.

6

The financial benefits conferred on the Plaintiff class as a result of this case are unprecedented. This court has estimated, conservatively, that Plaintiffs will recover several hundred million dollars in disability benefits to which they are lawfully entitled. Hyatt v. Heckler, 711 F. Supp at 836. These results were obtained in the face of monumental resistance on every claim made in this "extensive and procedurally tortured" class action. Hyatt v. Shalala , 6 F.3d at 252.

Based on the record in this case and the affidavits presented with Plaintiffs' fee motion, the success achieved by Plaintiffs is properly characterized as exceptional. Plaintiffs have succeeded in bringing about fundamental change to a recalcitrant agency which brought all of the power of the federal government to bear on Plaintiffs and their counsel while it resisted Plaintiffs' efforts to enforce the orders of this court and the Fourth Circuit each step of the way. Accordingly, a multiplier of 1.333 will be applied to the lodestar fee in this motion.

While the decisions mentioned above may have downgraded somwehat the numbers of claimants getting relief and the extent of financial benefits, the other fact-findings of the district court are supported by the record and have not been downgraded. We agree with the district court and are of opinion that a multiplier of 1.333 was justifiably applied to the fees on account of the exceptional results obtained by the plaintiffs' attorneys.

V.

To summarize, we are of opinion that the plaintiffs are entitled to attorneys' fees based on bad faith, which has been conceded by the government, for the period beginning June 19, 1988 through March 30, 1990. These fees should be computed at historic rates. Included in such fees is the claim of plaintiffs for fees for working on the fourth and fifth fee motions, or fee petitions, however they may be called. They also should be computed at historic rates. For the period following March 30, 1990 until June 19, 1994, we are of opinion the government was not in bad faith and its position was substantially justified, so no fees should be allowed for work done for that period

7

except for work done on the fourth and fifth fee petitions, which we note are allowable under the bad faith rule at historic rates. On remand, the district court will recompute the fees in accordance with this opinion.

The judgment of the district court is accordingly

<u>AFFIRMED IN PART, VACATED IN PART,</u>
<u>AND REMANDED WITH INSTRUCTIONS</u>.

8